IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AMALIA ASCENCIO DE RIVERA,<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY<br><br>　　Defendant. | CIVIL NO.: 14-1706 (MEL) |

**OPINION AND ORDER**

### I. PROCEDURAL AND FACTUAL BACKGROUND

Amalia Ascencio de Rivera ("plaintiff" or "claimant") was born on August 10, 1968, and has completed fifth grade. (Tr. 396, 425.) Prior to her initial application for Social Security disability benefits, plaintiff worked as a cook, operator, packer, and sewing machine operator. (Tr. 425.) On December 9, 2010 plaintiff filed an application for Social Security disability insurance benefits ("DIB"), alleging disability on the basis of high blood pressure, posterior disc bulge (L4-L5), disc desiccation (L4-L5, L5-S1), and depression. (Tr. 424, 396.) The alleged onset date of her disability was February 8, 2010. (Tr. 432.) The date last insured was June 30, 2011. (Tr. 432.) Claimant's application was initially denied on February 17, 2012, and again upon reconsideration on April 13, 2012. (Tr. 69, 73.) A hearing before an Administrative Law Judge ("ALJ") was held on April 15, 2013. (Tr. 34.) Claimant, who was represented by counsel, appeared and testified at the hearing; a vocational expert ("VE") testified by telephone. (Tr. 22.) The ALJ rendered a decision on August 29, 2013, finding, at step five of the sequential evaluation process, that plaintiff was not disabled from February 8, 2010 through June 30, 2011. (Tr. 33.) The Appeals Council denied plaintiff's request for review on July 21, 2014. (Tr. 1.)

Therefore, the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). (Id.)

On September 17, 2014, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, alleging that defendant's finding that she was not disabled was not based on substantial evidence.[1] (ECF No. 1, ¶¶ 2, 6.) Defendant answered and filed a certified transcript of the administrative record. (ECF No. 16.) Both parties have filed supporting memoranda of law. (ECF Nos. 23, 29.)

## II.    STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

## III.   ANALYSIS

Claims for DIB are evaluated under a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003). At step two the ALJ found that claimant's lumbar disc desiccation, moderate canal stenosis with posterior disc bulge, and major depression

---

[1] Plaintiff amended the complaint on February 10, 2015 to correct her name. ECF Nos. 10, 12.

were severe impairments. (Tr. 25.) The ALJ then determined that claimant had the residual functional capacity ("RFC") to perform light work, with some physical limitations, with ability for unskilled work that is simple, routine, and repetitive.[2] (Tr. 27.) Based on this RFC, at step five and with the assistance from the testimony of the VE, the ALJ denied claimant's disability at the fifth step because there were jobs that existed in significant numbers in the national economy that claimant could have performed. (Tr. 31–32.)

    A.  Attention and Concentration

Plaintiff raises a series of objections to the way in which her attention and concentration limitations, which result both from her physical pain and her mental health impairments, were incorporated into the hypothetical to the VE. The record clearly reveals claimant has some level of impairment with respect to her attention and concentration. Treating physician, Dr. Aurelio Collado Vélez ("Dr. Collado") concluded that claimant's pain or other physical symptoms would be severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks. (Tr. 474.) Claimant was also treated through the State Insurance Fund Corporation ("SIF") and indicated that her pain interfered with her sleep, social life, household chores, and sitting, standing, and walking. (Tr. 154.) On the other hand, claimant indicated she was able to care for her own hygiene, watch television, use money, cook, use the phone, and pay bills. (Tr. 260.) Additionally, claimant was consistently described as alert, cooperative, oriented, coherent, logical, and relevant. (See, e.g., tr. 143, 159, 170, 172, 195, 238, 266, 270.) Claimant was evaluated by SIF psychiatrist Dr. Alberto Rodríguez Robles ("Dr. Rodríguez"), who concluded claimant's attention and concentration were decreased, but her memory was adequate. (Tr. 178.)

---

[2] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

Claimant was also evaluated by consultant psychiatrist Dr. Roberto Gutiérrez ("Dr. Gutiérrez"). (Tr. 589.) Dr. Gutiérrez also found claimant's attention and concentration reduced. (Tr. 590.) Consultant Dr. Zulma Nieves ("Dr. Nieves") completed a mental residual functional capacity assessment based on claimant's medical record. She concluded, with respect to claimant's "sustained concentration and persistence limitations," that claimant was not significantly limited in her ability to carry out very short and simple instructions, but was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods. (Tr. 325.) Dr. Nieves then concluded claimant retained the ability to "learn, understand, remember and carry out simple and detailed work instructions, maintain attention and concentration for two hour periods [without] undue interruptions, perform as per scheduled and routine, appropriately interact with supervisors, co-workers and others, and can adequately complete a normal workweek and workday." (Tr. 326.)

Plaintiff first argues that the ALJ failed to incorporate all of the recognized limitations into the hypothetical question posed to the VE. "In order for a vocational expert's testimony to constitute substantial evidence, the vocational expert's opinion must be in response to a hypothetical that accurately describes the claimant's impairments." Cohen v. Astrue, 851 F. Supp. 2d 277, 284 (D. Mass. 2012) (citing Arocho v. Secretary of Health & Human Servs., 670 F.2d 374, 375 (1st Cir.1982). The hypothetical need not reflect each finding reported by the treating physicians, but must "reasonably incorporate the disabilities recognized by the ALJ." Camacho v. Astrue, 978 F.Supp.2d 116, 122 (D.P.R. 2013) (citing Velez-Pantoja v. Astrue, 786 F.Supp.2d 464, 469 (D.P.R. 2010) (quoting Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994))).

According to plaintiff, the ALJ recognized disabilities not incorporated into the hypothetical posed to the VE when she stated during the RFC analysis:

> Partial weight is given to Dr. Zulma Nieves, the psychologist from the State Agency's staff. The undersigned disagrees with Dr. Nieves' opinion that the claimant can follow detailed work instructions, maintain attention and concentration for two hours periods without undue interruptions, perform as per schedule and routine, appropriately interact with supervisors, co-workers and others, and adequately complete a normal workweek and workday in view of the findings diminished attention and concentration.

(Tr. 30.) The ALJ cited to the opinion of Dr. Rodríguez indicating claimant's attention and concentration was decreased. (Tr. 178.) The plaintiff believes this expression amounts to an affirmative finding that she did not have the capacity to follow detailed work instructions, maintain attention and concentration for two hours, follow a schedule, appropriately interact with others, or complete a normal work period. This reading is not supported by the context of the opinion.

Dr. Nieves's opinion lists, in a single sentence, that claimant is able to perform all of these five key functions. Defendant emphasizes the use of "and" to connect the functions as opposed to "or" or "and/or." ECF No. 29, at 7. Defendant argues that the ALJ disagreed that plaintiff could perform all of the functions, but was not concluding claimant was incapable of performing any of the functions. Id.

The ALJ had previously in the opinion accepted that claimant had some diminished capacity for attention and concentration. The ALJ then incorporated these recognized limitations into her RFC that claimant was limited to "unskilled work that is simple, routine and repetitive." (Tr. 29.) This finding is in tension with Dr. Nieves's opinion that claimant could follow detailed work instructions. The remaining limitations are not similarly contradicted by the ALJ's previous findings. Although the ALJ found a concentration limitation, the ALJ never expressed this would impede her ability to focus for two hour periods when performing simple and repetitive tasks.

The ALJ also never stated elsewhere in the opinion that claimant was significantly limited in or wholly unable to follow a schedule, appropriately interact with others, or complete a normal workday or workweek in the context of unskilled, routine work. Read correctly, the ALJ's statement indicated claimant could not simultaneously perform all the identified functions while receiving detailed instructions. Thus, the ALJ gave the opinion of Dr. Nieves partial weight, as opposed to no weight or full weight, in light of the understanding that claimant's diminished attention and concentration limited her to receiving simple work instructions. This limited weight, however, does not create an independent limitation not assessed elsewhere in the opinion.

      Plaintiff also claims that the expression that she can perform work that is "simple, routine and repetitive," did not sufficiently portray her limitations with respect to attention and concentration. The ALJ incorporated this aspect of her RFC determination verbatim into the hypothetical question to the VE. (Tr. 27, 38.) The question posed was whether there were jobs in the national economy for an individual who has the ability to perform light work, with additional physical limitations not relevant here, and "an ability for non-skilled work that is simple, routine and repetitive." (Tr. 38.) Although the ALJ did not specifically mention either attention or concentration, claimant's difficulties in this regard are subsumed within the ALJ's expression that claimant can execute simple tasks. (Tr. 29.) This limitation implies that claimant is restricted in her ability to execute more complex jobs, which require greater attention and concentration to complete. This incorporated claimant's limited ability to concentrate and maintain attention by excluding jobs with more complex duties. See Boyce v. Colvin, No. 1:13-CV-00381-JAW, 2014 WL 5473237, at *4 (D. Me. Oct. 27, 2014) ("This court has repeatedly upheld limitations to simple, routine, and/or repetitive work when the claimant has been found to be moderately

limited in the area of concentration, persistence, or pace."); Sohm v. Astrue, No. 3:07CV257–J, 2008 WL 2437541, at *3 (W.D. Ky. June 13, 2008) (finding that hypothetical question was supported by substantial evidence where moderate limitation in abilities to maintain concentration, persistence and pace were not expressly mentioned but, "[i]nstead of enumerating particular ways in which the limitations might affect [plaintiff], the ALJ simply assumed the inability to perform in certain ways ... [such as] assum[ing] that [claimant] could do only 'simple, repetitive work.'"). The ALJ did not err since the hypothetical reasonably incorporated the disabilities recognized by the ALJ, accounting for claimant's limited attention and concentration in the form of a limitation on the types of tasks he could perform.

Plaintiff's final argument here is that the ALJ's emphasis on the claimant appearing coherent, logical, relevant, and fully oriented in the three spheres was inappropriate because these are distinct considerations from attention and concentration. Although the ALJ made reference to these positive findings, she did ultimately accept that claimant had diminished attention and concentration and moderate difficulties in persistence or pace. (Tr. 26, 29.) The ALJ pointed to the consistent descriptions of claimant as coherent, logical, relevant, and fully oriented in determining that the limiting effects of the diminished attention and concentration were not as severe as claimed. Thus, the ALJ was not confusing the concepts, but rather using others' observations of claimant's behavior to gauge the material limitations the attention and concentration deficits wrought on claimant's functioning. The ALJ did not rely on these descriptors alone. Because claimant testified at the hearing, the ALJ was able to assess claimant's demeanor and determined she "answered all questions without problems." (Tr. 30.) Thus, the ALJ's analysis here was not in error.

B. Physical Limitations

In her opinion the ALJ found that claimant did have a medically determinable impairment (lumbar disc desiccation at the L4-L5 and L5-S1 levels and a moderate canal stenosis at the L4-L5 level) that produced low back pain. (Tr. 24–25, 29.) Plaintiff argues that the ALJ "tried to diminish [her] pains, weaknesses, and limitations by mentioning that she] takes care of her personal needs." ECF No. 23, at 23. Plaintiff cites to Roddy v. Astrue, 705 F.3d 631 (7th Cir.2013), where the court cautioned the ALJ against overly relying on plaintiff's ability to do laundry, ride public transport, and grocery shop to establish an ability to work full-time, where the record also showed plaintiff's daily activities were done with significant limitations.

While "a claimant's daily activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an [ALJ] properly may take such activities into consideration in assessing the credibility of a claimant's allegations." Hadley v. Colvin, No. 2:14–CV–77–JHR, 2014 WL 7369501, at *5 (D.Me. Dec. 28, 2014) (internal citations omitted). Here, claimant's daily activities were noted as one of multiple factors considered in determining the credibility of her symptoms and self-reported functional limitations. The ALJ examined in turn the treatment notes from the SIF and the reports of a consulting neurologist and a consulting internist. (Tr. 28–31.) Thus, the ALJ did not improperly discredit the existence of claimant's symptoms of pain, weakness, and limitation. See Valentin–Rodriguez v. Comm'r of Soc. Sec., No. 12–CV–1488 MEL, 2014 WL 2740410, at *9 (D.P.R. June 17, 2014) (finding that the ALJ did not discredit the existence of plaintiff's symptoms by noting the plaintiff's daily activities but rather adjusted the extent to which such symptoms affected her).

C.  Social Functioning

Plaintiff's final contention is that the ALJ failed to account in the RFC for her being "socially withdrawn." Plaintiff highlights that Dr. Rodríguez noted she "stays distant, withdrawn and she does not like to interact with people." (Tr. 178.) Yet Dr. Rodríguez also stated that plaintiff used to get along with her coworkers and supervisors at work. (Tr. 177.) Plaintiff confirmed to Dr. Gutiérrez that she had a "good relationship" with her boss and coworkers. (Tr. 589.) Although plaintiff reported to Dr. Gutiérrez that "in stressful situations she withdraws and cries until the feeling is gone," she also reported having good relationships with her husband, children, family, and neighbors. (Tr. 590.) None of the medical sources, including Dr. Rodríguez and Dr. Gutiérrez, indicated any functional limitations that would result from claimant's social reticence. Therefore, the omission from the RFC of a limitation with respect to social interaction is supported by substantial evidence.

In view of the foregoing analysis, the Commissioner's decision is supported by substantial evidence and is hereby **AFFIRMED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of March, 2016.

s/Marcos E. López<br>U.S. Magistrate Judge